The first is number 24, 2042, Kelly v. United States. Mr. Ruegg. Good morning, Your Honor. We have sort of three distinct issues on this appeal. One is the statute of limitations, another is the merits of the taking claim, and the third is the implied contract claim that we made in the district court. So I'll try to split my time on those three issues as much as I can. But the statute of limitations issue is also going to be argued in the case that follows us, and we have much the same arguments in the briefs. And that argument is that the Bright case issued by this court in 2010 is the law, still is the law, and has not been implicitly overturned by the CalPERS case, the securities case that the Supreme Court decided in 2017. The Bright case clearly was on all fours with what we have here. It was on all fours with the law at the time. Can I just be clear? I think I remember from your brief that you have an argument about why CalPERS really didn't implicitly overrule Bright, a fairly extended argument, but I don't think you made any kind of argument that said, as a technical or, and I don't until we declare that Bright is, was implicitly overruled. I don't think you made an argument along those lines. I've run into some difficulties, but I just want to, your argument. You mean our reliance, the reliance argument you mean that we made here? Not quite. So we have not yet said that Bright is no longer good law in light of CalPERS. That's right. That's right. I don't think you've made an argument that says the simple fact that we have not yet said that should mean that Bright should govern this case. Well, I think if we did not say that that explicitly, we certainly intended that by saying that CalPERS cobbled together with these other cases does not, and the, and the court of, and the court of license. I understand Jeff Toronto's question. I think he's asking you whether this panel is bound by Bright until the in-bank court overrules it based on the Supreme Court authority or whether we directly have an obligation to consider what the Supreme Court did in CalPERS. Well, I think that you do have an obligation to consider it, obviously, but I think it is still the law of this court, and I do not think anything in CalPERS changes that with regard to this court. I think that, I really do believe that if Bright's going to be overruled, this court has to do it, because implication and innuendo is not going to bring us there. But we, we have cases, I think, that say that, for example, a panel decision which ordinarily would bind a later panel doesn't bind the later panel if it's really quite clear that the Supreme Court, in the meantime, has made a pronouncement that is inconsistent with the earlier. No, I think that's, I agree with that, Your Honor. I think that's true. But our position is that the Supreme Court did not make it, take a position that's inconsistent with Bright. Bright was an extremely well-reasoned decision that was on all fours. It covered the Tucker Act, class actions, John Sand, the Sand case. It covered equitable versus other semantics of what is a class action tolling with transaction and administrativeness. It, it dealt with all that and said very specifically, the last sentence in Bright says, you have tolling in a class action under the Tucker Act for taking claim. Yeah, but it says that that's based on the fact that it's statutory tolling rather than equitable tolling. It does, Your Honor. And I don't think that Kalper's eliminated that, that issue. I think you've got to grapple with that with this court if you're going to adopt that. I think in the, in the Kalper's case, it was a statute of repose. And in the end, it was a 5-4 decision, highly criticized by the dissent because of that issue. But clearly under that standard, it rested on statute of repose, which is not what we have here. It's not a statute of repose. And all the courts have agreed with that. And that's why Sand is distinguishable. I think the Bright court had the absolute right answer and considered all the things, including the reasons why Congress set up class actions in the first place for the efficiency of the court system. Why is 2501 not a statute of repose? Because it doesn't have the characteristics of a statute of repose. There's nothing in that statute that says this is the end. This is it. Statute of repose normally say as soon as you discover that, it's, it's, at that period of time, that's it. This is a statute of limitation that says when the events occurred, you have the statute of limitations for that period of time. I think this leads us into the biggest problem that this court has to face, and that's this. It's a case of fundamental fairness. If you look at this, and this, this is different from what we have in Blue Cross Blue Shield. The operative facts here were 2008. Statute of limitation is 2014. Bright comes out in 2010. Bright is good law, the law of the land, 10, 11, 12, 13, 14. When I have to advise my client, what do you do? Do you follow protective action, or do you just rely on the fact that Bright has said that you're part of the class? I'm just trying to talk. Okay. I don't remember your brief making this point, though it is one that popped into my mind as I was reading, which is unlike the other case. By the time CalPERS came around, your six years were up. Yeah, by the time CalPERS, and it really didn't pop up until 2024 as saying Bright is over. Let's just assume 2017, okay. I don't remember your making an argument to that effect. We did make the reliance argument. Reliance originally, but not that. It mattered that the, I'm now just by assumption in this case, after your six years had run, which is not true in the next case. The overruling of Bright was done in 2024 in our case by a court of claims judge. That's the first time that Bright was overruled that we can find anywhere. Matter of fact, in 2022, we have a case, a Bridge Bright case, I think it was, where the court of claims applied Bright five years after CalPERS. I think there's an, I think that our reliance issue is that even if you feel- There's no authority under 2501 that you can toll the statute if you've relied on some judicial decision that gave you a window of opportunity. But, Your Honor, we didn't have any opportunity. No, no, no, but there's no cases that say reliance can toll a statute under 2501. Well, I don't think we're talking about that. What we're talking about is that this court, who has the sole responsibility for appeals over this issue, the Tucker Act, made it very clear under Bright that there was a tolling of the statute. It made it in 2010, during the period of time when we had to make that decision on what do we do. A company had lost all of its assets. You have to go forward and bring a case, a protective case. Some time in the future, some case would change that. We don't think it did. We do not think that CalPERS changed it. We think that Bright is still the right law, and we don't, and we think if, remember, too, that the government appealed Bright on the very issues we're talking about here to the Supreme Court, and cert was denied. That's important in this case because of the series of cases the Supreme Court had looked at. They denied cert in Bright, and so now we have the law. This is it, and I think that in that case, given the fact that the prior cases we're talking about, whether you look at, you know, go back to American Pipe, you look at Sands, you look at all these, Wu, you know, is it Wong? I'm sorry, the Wong case, just a few years ago, the Supreme Court said that on a tort claim under the Tucker Act, it's not jurisdictional. So your argument is that CalPERS decision did not abrogate Bright because it involved a statute of repose? Is that your argument? I think when you read the CalPERS decision, Justice Kennedy was talking about the difference between a normal statute of limitations and where Congress has specifically, on the legislative history and everything, said that this is a statute of repose. In the securities case, we have to have a finality, and it was only a three-year statute of limitations, but in the course of, you know, a legislative-created claim like the Securities Act, it can disrupt the market. So we're going to have an end, and it was all there, and that's what he talked about. He didn't talk about the statute of limitations like we have in the Tucker Act, which is quite different, and I think that that's something maybe the Supreme Court eventually will have to address, but I don't think CalPERS did it. And even the Court of Claims judge said, I'm doing it by implication. It's got to be expressed in the situation. Can I ask a question on a slightly different topic? On the assumption that American Pipe is still available, don't most, if not all, of your claims fail under American Pipe anyway? I know the claims court didn't say so, like your contract claim. There were no contract claims in Washington Federal, right? There were no contract claims in Washington Federal. Right, so, and American Pipe and whatever the later case was that said it really has to be the same claim, and so the contract claims might be unavailable regardless, even if American Pipe were available. Might be. I have some arguments on that, but might be. That might be true as well about one or two of your taking claims. For example, if you say your Tier 1 capital taking claim is really quite different from the claim that was litigated in Washington Federal, it would maybe follow that your Tier 1 capital claim was not present in Washington Federal, in which case American Pipe wouldn't apply to that either. What do you think would survive here for you if American Pipe were still available? I think the full taking claim survives, because under the Washington Federal case, the putative class, remember class action was never determined, the putative class include everyone who had stock in the GSEs, everyone. Clearly the banks had stock in the GSEs, but the Washington Federal case only limited to that property taken. They didn't get to the point of what was the result of that, for any plaintiff, not just our plaintiffs. So in the event of it had a case gone for and there was a class certification, the class would have been defined. We may have been a subclass because we had greater property loss than some others, but in class actions, you can have some class members can have greater property loss than others. It's not a different theory, it's a taking by the government for public purpose without compensation. But those disparate losses have to be based on the same theory, the same underlying theory, correct? Yes, Your Honor, and they are the same theory. The theory is that the government took, nationalized the GSEs. What happens as a result of that, nationalization is the taking. For people who only had stock, it was the value of their stock, which Washington Federal said. For our banks, it was not. Because of the specific arrangements the government had and the regulators, they encouraged these banks to invest the same as bonds and stocks with government backing in their tier one capital. When this happened with nationalization, there was an additional taking, and that taking was all of the assets of these banks. After you made the investment, the transition into the enterprises, you left that money parked there for several months. No, Your Honor, what happened was the government was looking for ways to finance the GSEs. Tier one capital is limited to U.S. bonds at the time, U.S. bonds and cash only, because those are backed by the federal government, and so solvency of a bank could only be that. The U.S. government would not allow anything else. They came to the banks and said, look, we're going to make an exception. We want you to invest in these GSEs. We want you to put your cash into these GSEs. In return, we will treat it the same as bonds and cash. That was the deal, and all the incentives that went with that. And so if you look at this from that perspective, it was the government and the banks together that made this deal, and in making that deal, look, a good example is if the government just devalued U.S. savings bonds and said they weren't going to honor them, we wouldn't have this appeal. That would be a taking, absolutely. That would be an absolute taking. There's no difference. You're into your rebuttal time. Do you want to save it? Yes, Your Honor. I'll give you two minutes. Mr. Jerome. Good morning, Your Honors, and may it please the Court, Simon Jerome for the federal government. American pipe tolling does not apply to Section 2501. That conclusion follows from three principles expressed in the Supreme Court's case law. The first is that jurisdictional statutes of limitations are not subject to equitable tolling. We see that principle in the Wong case. We see it in Beckler. We see it in numerous Supreme Court cases and decisions of this  Secondly, Section 2501 is a jurisdictional statute of limitation. We have that from the John R. Sand case from the Supreme Court. And finally, American pipe tolling is equitable in nature. The Supreme Court explained that. Is it your view that Sand is dispositive in this case, as to your position? Partially dispositive, Your Honor. I think Sand certainly, the holding that Section 2501 is a jurisdictional statute of limitation is an important part of the logic. But similarly, you need the logic that American pipe tolling is equitable in nature. We acknowledge that this Court reached a contrary conclusion in its Bright case in 2010, but Kalpers from the Supreme Court, which is an intervening decision, unambiguously abrogated that logic. And to get to the procedural question that Judge Toronto asked my colleague earlier, it's, I think, indisputable under this Court's case law, we cite the Troy case at page 23 of our brief, that so long as the intervening decision of the Supreme Court undermines the logic of the case, that a panel of this Court can depart from it. That is what we have here. I understood my friend to attempt to distinguish Kalpers on the basis that it involved a statute of repose. With respect, that distinction is meaningless in this case. This Court, indeed, in its Hall case, which we cite, has analogized jurisdictional statutes of limitation to statutes of repose. There's no question that we're not arguing Section 2501 is not a statute of repose, but it is a jurisdictional statute of limitation, and that has consequences. I heard a lot in the conversation in my friend's presentation about fundamental fairness. I heard questions of, you know, reliance interests. Those are equitable considerations. And just to put a finer point on it, the key part, I think, of this case was that it looked to the type of tolling, the source of the rule, and it said it was a statutory rule. There can be no question after Kalpers that how we determine what is a statutory tolling rule and what is an equitable tolling rule. Justice Kennedy explained you need to look to the text of the statute. If the tolling rule comes from the text of the statute, it's a statutory rule. But in contrast, American pipe tolling and this Court's, you know, the Court of Federal Claims' equivalent local rule 23, they rest, there's no textual indication that tolling is to be the rule. And so for those reasons, the Bright decision has been abrogated. Kalpers controls here, and all of the taking claims are untimely. As Judge Franto indicated, or the premise of your question, Your Honor, was that the contract claims, there were no contract claims in Washington Federal, which is the case. And so all of the claims are untimely, whether because they're untold or because they were not present in the action that my friend invokes to substitute. Have you made the argument to us, not on the contract claims, but that any of the takings claims here were also missing from Washington Federal? We have not, Your Honor, because we've accepted. I mean, I think, you know, in her His claims have to be so close as to be told, but not so close as to be barred by binding precedent of this Court. You were happy to make that on the merits side. We've accepted the framing that, sure, that, you know, and, you know, to explain further, of course, I understand my friend to say that his clients' interests are different because they are downstream of the taking. But respectfully, you still have to the relevant time of analysis is the imposition of the conservatorship. This Court unambiguously said the imposition of the conservatorship on their enterprises did not constitute a taking. And so any harm that flows from that. One other, I think, minor question. Yes, Your Honor. One thing happened on September 6th, which is the conservatorships. The second thing happened on September 7th, as I recall, which is the deal with Treasury to infuse money in exchange for super preferential stock. Does anybody make here a distinction between those two dates? No, Your Honor. And Judge Silfen, at least, the decision below, said the parties do not dispute for purposes of this motion the approval date. I believe it was September 6th. I can double check. But with one of those dates in September, those dates for purposes of the motion were undisputed. That was my understanding. If there are no further questions. You do say in your brief that Sand is directly on point here. Yes, Your Honor. Well, do you concede that Sand has conflict or at least tension with other Supreme Court cases? No, Your Honor. And in fact, the Supreme Court has reaffirmed Sand. In the Wong case in particular, you know, I understand in the briefing there's a lot about how this clear statement rule that the Supreme Court now imposes requires a different result. The Supreme Court acknowledged in Wong that its outcome, that the outholding in Sand was a product of stare decisis. And so the Supreme Court is well aware that it has sort of charted a new path with respect to interpreting novel statutes. But it said as a matter of stare decisis, we've interpreted this very old statute the same way a number of times. And we declined to depart from that. That holding is binding on this court. Okay. Thank you, Your Honors. Mr. Rurak. You have two minutes. The government lawyer said that our claims are downstream. They're not downstream. I think that one of the problems we have with the opinion below, and we briefed this, is that the court below did not live with the normal procedures that she had to undertake. And that is treating the complaint and the allegations as true and light and most faithful to us. She didn't even address those. And if you look at paragraphs 142 through 152, you see directly what was claimed here. This is not about the GSEs losing stock value. The entire arrangement here was one for this tier one capital, which was something between the federal government and the banks. They asked the banks to put up their banks in effect to help the GSEs. And in part of that, they said, we will treat the GSE stock like bonds and stock. And you know what bonds are? Guaranteed by the federal government. And so what happened was things changed. Hera was passed afterwards. You've got to go back to the time this transaction was made to see what the investment, you know, the real investment backed expectations were. The expectations were that we're going to give you this money for the GSEs, but you've got to protect us like you protect the bonds. That's what was going on here. And when the nationalization occurred, did the stock drop? Yes. But the direct result was that the sovereignty went away because of that. Just as though the government refused to honor savings bonds. Would they do that? They could. But wouldn't that be a taking? Absolutely. There was no difference here. But the importance here is that and why this falls under the Washington federal class is because, yes, they were all shareholders. Yes, they suffered devalue. But that doesn't mean that every class member suffers the same damages. In this case, there were more in addition. The court held in Washington federal that we're not entitled to the value of our stock, but that's just a part of that. I think we're out of time. Thank you. Thank both counsel. The case is submitted.